**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia O'Neil,<br><br>    Plaintiff,<br><br>v.<br><br>County of Maricopa,<br><br>    Defendant. | No. CV-25-00912-PHX-SHD<br><br>**ORDER** |

Pending before the Court is Defendant County of Maricopa's ("the County") motion to dismiss Plaintiff Patricia O'Neil's Complaint for failure to state a claim under Federal Rule of Procedure 12(b)(6). (Doc. 9.) O'Neil responded to the motion, and the County replied. (Docs. 15, 16.) The motion will be **granted** with leave to amend.[1]

**I.    BACKGROUND**

In February 2021, O'Neil began working for the County as a contractor. (Doc. 1 ¶ 8.) A year and a half later, in June 2022, the County hired O'Neil as a Planning Specialist in the Office of Preparedness and Response. (Doc. 1 ¶ 7.) Before and during O'Neil's employment with the County, she "volunteered with the Maricopa County Democratic Party ("MCDP") during her personal time." (*Id.* at ¶ 11.)

In December 2020, two months before she began working with the County as a contractor, O'Neil was elected First Vice Chairwoman of MCDP. (*Id.* at ¶ 12.) She became Chairwoman in August 2023, about a year after the County hired her as an employee. (*Id.*

---

[1] The parties did not request oral argument, and the Court does not believe oral argument is necessary, so the motion will be decided without a hearing. *See* LRCiv 7.2(f).

at ¶ 13.)

At the time O'Neil was hired as Planning Specialist, the County was operating under the 2020 Code of Conduct ("2020 Code"). (*Id.* at ¶ 14.) The 2020 Code limited an employee's political activity while on duty:

> **L. Political Activity:** While on-duty or representing the County, Employees are expected to behave in an unbiased manner and without favoritism for or against any political party or group or any member in order to promote public confidence in government, government integrity, and the efficient delivery of governmental services and to ensure that Employees are free from any expressed or implied requirement or any political or other pressure of any kind to engage or not engage in political activity.

(*Id.* at ¶ 14.) But, on February 28, 2024, the County Board of Supervisors adopted a new Code of Conduct ("2024 Code"). (*Id.* at ¶ 16.) The 2024 Code specified that "[e]mployees shall not . . . [b]e members of a political party's national, state, or local committee" or "[b]e officers or chairpersons of a partisan political club's committee." (*Id.* at ¶ 18.) O'Neil alleges that while she signed and was hired under the 2020 Code, she was "never informed of nor did she sign" the 2024 Code. (*Id.* at ¶¶ 15, 17.)

On April 1, 2024, O'Neil met with "Cathleen T[.] program manager for the Office of Preparedness and Response, and Josh Y[.], a supervisor." (*Id.* at ¶ 19.) They told O'Neil "that someone had reported her 'political membership' to the County," and informed her that, as Chairwoman of MCDP, she was violating the 2024 Code. (*Id.* at ¶¶ 20, 21.) Cathleen T. gave O'Neil "24 hours to decide whether she wanted to continue working for the County or continue in her role with the MCDP, asserting that she could not do both." (*Id.* at ¶ 22.)

The next day, Joanne M., the Human Resources Group Manager, told O'Neil that while she did not have to decide in 48 hours, "she would be put on administrative leave pending an investigation into a potential violation of the [2024 Code]." (*Id.* at ¶ 23.) Eight days later, on April 11, 2024, "Moline and Executive Director Jeanene F[.] invited [O'Neil] to a video conference meeting," where they informed O'Neil that she was violating the

2024 Code, and gave her 24 hours to resign from MCDP or be terminated. (*Id.* at ¶¶ 24–26.) O'Neil did not resign, and the County fired her. (*Id.* at ¶ 27.)

O'Neil filed this case against the County on March 19, 2025. (Doc. 1) She brings two claims under 42 U.S.C. § 1983: (1) a "First Amendment Freedom of Association Violation," which asserts that the 2024 Code violates the First Amendment "on its face"; and (2) a "First Amendment Retaliation for Political Party Association, which asserts that the County violated the First Amendment when it fired O'Neil for holding office in MCDP. (*Id.* at 5–8.)[2] On April 16, 2025, the County moved to dismiss the Complaint, arguing O'Neil's claims are foreclosed by two Supreme Court cases—*United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548 (1973) and *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). (Doc. 9 at 3.) The motion is fully briefed. (Docs. 15, 16.)

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A claim is plausible if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (cleaned up)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and . . .

---

[2]   Though O'Neil cites *Elrod v. Burns*, 427 U.S. 347 (1976) in her Complaint, she has not alleged, nor does she argue, that the County fired her because she is a Democrat. (*See generally*, Docs. 1, 15.) *Elrod's* framework is therefore inapplicable here. *See* 427 U.S. at 372 (holding that public employees may not be dismissed based solely on their political party affiliation, as opposed to their leadership role in a partisan group, regardless of its affiliation).

recovery is very remote and unlikely." *Id.* at 556 (cleaned up).

## III.   DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants argue that O'Neil's claims fail at the first step because even accepting her factual allegations as true, her claims fail as a matter of law because she cannot show that the 2024 Code violates the First Amendment.[3] The Court agrees.

The Supreme Court has long held that federal and state governments may restrict their employees from participating in certain partisan political activity. *See Letter Carriers*, 413 U.S. at 556–57; *Broadrick*, 413 U.S. at 607. In *Letter Carriers*, the Court considered whether the Hatch Act, which prohibited federal employees from "active participation in political management or political campaigns," violated the First Amendment. 413 U.S. at 551. The plaintiffs argued that the Hatch Act unlawfully prohibited federal employees from engaging in protected political activity, such as becoming members of national political committees, "holding office in a political club," and "becom[ing] a precinct Democratic Committee Woman" in a "County Democratic Committee." *Id.* at 551 n.3. The Supreme Court held that "neither the First Amendment nor any other provision of the Constitution invalidates a law barring this kind of partisan political conduct by federal employees." *Id.* at 556.

This principle applies with equal force to state and local governments. *See Broaderick*, 413 U.S. at 605. In *Broaderick*, the Supreme Court considered language nearly identical to that challenged by O'Neil—namely, an Oklahoma statute that prohibited state employees from, among other things, being "a member of any national, state or local committee of a political party, or an officer or member of a committee of a partisan political

---

[3] O'Neil's first claim is a facial attack on the 2024 Code, while her second claim is an as applied challenge. (*See* Doc. 15 at 6–7.) Failure to show as a matter of law that the 2024 Code's political participation restrictions violate the First Amendment is fatal to both claims.

club, or a candidate for nomination or election to any paid public office." *Id.* at 606. Citing *Letter Carriers*, the Court held that the Oklahoma statute did not violate the constitution. *See id.* at 605, 618.

O'Neil's claims are foreclosed by *Letter Carriers* and *Broaderick*. Like the Oklahoma statute at issue in *Broaderick*, the 2024 Code prohibits County employees from being "members of a political party's national, state, or local committee" or "officers or chairpersons of a partisan political club's committee." (Doc. 1 at ¶¶ 16–18.) And, as with the plaintiff in *Letter Carriers* who wanted to be a "precinct Democratic Committee Woman" in a "County Democratic Committee," *Letter Carriers*, 413 U.S. at 551 n.3, O'Neil challenges the 2024 Code's prohibition of her role as Chairwoman of the Maricopa County Democratic Party.

O'Neil offers no meaningful distinction between her claims and those raised in *Letter Carriers* and *Broaderick*. In fact, she does not appear to contest that *Letter Carriers* and *Broaderick* preclude her claims, instead arguing that these cases were wrongly decided and that subsequent amendments to the Hatch Act by Congress have overruled them. (*Id.* at 5 (arguing that *Letter Carriers* and *Broaderick* should be "reassess[ed]" because they "cannot be reconciled with *Pickering* [*v. Board of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968)] after the congressional actions since the Hatch Act"); *see also id.* at 9–13 (arguing that the Court should adopt the reasoning of the dissent in *Letter Carriers*, rather than its majority opinion)).[4]

O'Neil's arguments are unpersuasive. District courts must follow "controlling Supreme Court precedent until it is explicitly overruled by the Supreme Court." *Miranda v. Selig*, 860 F.3d 1237, 1242–43 (9th Cir. 2017) (quoting *Nunez-Reyez v. Holder*, 646 F.3d

---

[4] O'Neil's response briefly argues that the 2024 Code prohibits not just membership in a political committee, but registration as a Democrat. (Doc. 15 at 6–7.) As an initial matter, the Complaint does not make this allegation. (*See generally* Doc. 1.) In any event, it is inconsistent with the plain language of the 2024 Code, and with the Supreme Court's interpretation of similar language. *See e.g., Broaderick*, 413 U.S. at 615 (holding that the Oklahoma statute was not "substantially overbroad" and that "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied").

684, 692 (9th Cir. 2011)). O'Neil asserts that *Pickering* is irreconcilable with *Letter Carriers*. (Doc. 15 at 5.) But *Pickering* predates *Letter Carriers* and so could not have overruled it. Indeed, the Supreme Court expressly considered *Pickering* when it decided that the Hatch Act's prohibitions on certain partisan political activity do not violate the First Amendment. *Letter Carriers*, 413 U.S. at 554, 564. Thus, to the extent O'Neil argues that *Pickering* controls here, her argument is unavailing.

Further, Congress's decision to amend the Hatch Act in 1993 does not render *Letter Carriers* invalid. Short of constitutional amendment, it is the Supreme Court, not Congress, that has the last word on whether legislation is constitutional. *See Marbury v. Madison*, 5 U.S. 137, 167 (1803). That Congress lifted some of the prescriptions at issue in *Letter Carriers* does nothing to undermine the Supreme Court's holding that those prescriptions do not run afoul of the First Amendment.

In the end, the Supreme Court has considered whether government employees have a First Amendment right to serve on local political committees during their employment. It decided that they do not. O'Neil has thus failed to allege that the County has violated a right secured by the Constitution or the laws of the United States, and her claims will be dismissed.

## IV.  LEAVE TO AMEND

O'Neil requests leave to amend her Complaint. (Doc. 15 at 15.) Although Federal Rule of Civil Procedure 15(a)(2) requires courts to "grant leave to amend freely when justice so requires," leave to amend is not required if "amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 726 (9th Cir. 2000). O'Neil's facial challenge to the 2024 Code is plainly precluded by *Letter Carriers* and *Broaderick*. Any amendment of this claim would be futile and leave to amend will not be granted. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.") As currently alleged, O'Neil's as-applied challenge also fails as a matter of law. O'Neil cannot show that the County violated her First Amendment

rights by firing her for her membership in, or leadership of, a partisan political group irrespective of its political affiliation. But because leave to amend should be granted freely, the Court will allow O'Neil to amend her second claim.

Accordingly,

**IT IS ORDERED** granting the County's Motion to Dismiss for Failure to State a Claim (Doc. 9). Count 1 is dismissed with prejudice. Count 2 is dismissed with leave to amend. O'Neil shall file any amended complaint by **Wednesday, March 4, 2026**.

Dated this 11th day of February, 2026.

_____
Honorable Sharad H. Desai
United States District Judge